**UNITED COAL CO., et al., Plaintiffs,**

v.

**Eugene R. HOYER, et al., Defendants.**

**Civ. A. Nos. 83–M–16–B, 83–M–17–B and 83–M–18–B.**

United States District Court
W.D. Virginia,
Big Stone Gap Division.

May 23, 1983.

**1020**

W. Challen Walling, Bristol, Va., for plaintiffs.

M. Caldwell Butler, Roanoke, Va., Don R. Sensabaugh, Jr., Charleston, W.Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

United Coal Company and United Supply Company (plaintiffs) filed this defamation action in the Circuit Court of Buchanan County, Virginia. Named as defendants were Eugene R. Hoyer, Ralph W. Hoyer and Robert V. Berthold, Jr., who are or were general partners in the Charleston, West Virginia law firm of Hoyer, Hoyer and Berthold. Also named as defendants were Mountaineer Publishing Company, Inc. and Daily Telegraph Printing Company, corporations that publish newspapers in Grundy, Virginia and Bluefield, West Virginia. Subsequently plaintiffs dismissed Daily Telegraph as a party pursuant to Federal Rule of Civil Procedure 41(a)(1).

The court makes no finding of fact at this time. Therefore, it will recite the facts which do not appear to be in controversy, as represented to the court by counsel's briefs.

In their motion for judgment, plaintiffs allege that the defendants caused a certain defamatory statement to be published in newspapers printed and distributed by the Mountaineer and Daily Telegraph. The allegedly defamatory notice sets forth the existence of litigation in "Federal District Courts involving United Coal Corp. and three coal companies in West Virginia." Hoyer, who does business in West Virginia as a law partnership, represents three mining companies (Oak Knob, Horizon and Clover Mining Companies) which are presently in bankruptcy under proceedings in the United States Bankruptcy Court for the Southern District of West Virginia, Case Nos. 82–20063, 82–20064 and 82–20065.

On or about March 14, 1983, this action was purportedly removed to the United States Bankruptcy Court for the Western District of Virginia, Big Stone Gap Division, pursuant to 28 U.S.C. § 1478, by an "Application for Removal" filed by the defendants. Plaintiffs filed objections to the removal, contested the existence of subject matter jurisdiction, and filed a motion for remand and abstention.

On motion of plaintiffs, reference of the adversary proceeding by the District Court to the Bankruptcy Court was withdrawn by Order of the District Court entered March 28, 1983. Each of the adversary proceedings is now before the District Court for the Western District of Virginia, Big Stone Gap Division.

The plaintiffs' motion to remand these actions to state court is presently before the court. Although this motion raises several issues, the only issue which the court will address at this time is whether the court has jurisdiction over this action under 28 U.S.C. §§ 1471 and 1478 (Supp.1983). Section 1471 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a

court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

Section 1478 provides that a "party may remove any claim or cause of action in a civil action . . . to the bankruptcy court for the district where such civil action is pending if the bankruptcy courts have jurisdiction over such claim or cause of action."

Assuming the action was properly removed, in order for this court to have jurisdiction the action must be one "arising in or related to" a case or cases under title 11.

The sole basis for jurisdiction is the bankruptcy jurisdictional provisions of Section 1471. This court has this case solely by virtue of its withdrawal of the reference to the bankruptcy court, which was required as a result of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Therefore, it is helpful to review bankruptcy courts' application of Sections 1471 and 1478. As the defendants concede, there are no reported cases on point in which a judgment debtor of the bankrupt has sued the attorney for the bankrupt. However, the court will attempt to glean guidance from the few reported bankruptcy decisions that interpret the "related to" language of the statute.

For example, in *In Re Haug,* 19 B.R. 223, 6 C.B.C.2d 479, 481 (Bkrtcy.D.Or.1982) the plaintiff sought judgment against the debtor for a determination of non-dischargeability and damages resulting from the sale of a restaurant to the plaintiff. The plaintiff also joined several non-debtors as co-defendants alleging common law fraud in connection with the sale. The non-debtor co-defendants filed a motion to dismiss contending the court lacked jurisdiction to hear the claims against them. The court granted the motion and stated:

Legislative history points to various tests governing federal question jurisdiction under 28 U.S.C. 1331(a) for guidance in applying the 'arising under' language of 28 U.S.C. 1471(b). All of these tests require that the rights of either the plaintiff or the defendant be created by or be dependent upon an appropriate federal statute. 1 *Collier on Bankruptcy,* § 3.01 at 3–39 (15th Ed.1981); Wright, *Law of Federal Courts,* § 17, p. 67, (West, 3rd Edition, 1976). Alternatively, for purposes of applying the other tests of 'arising in or related to' under 11 U.S.C. 1471(b), there must be a reasonable nexus or logical connection between the civil proceeding for which jurisdiction is sought and the parent bankruptcy proceeding. A tenuous connection between the controversy and the debtor, his assets, and the administration of his estate will not support jurisdiction under the language of 28 U.S.C. § 1471(b).

*Id.* at 224.

The court also stated that the involvement of multiple defendants set of facts which results in federal cause against one defendant and nonfederal causes against other defendants is sufficient to satisfy the "arising out of the same transaction" requirements of Federal Rules of Civil Procedure governing joinder of persons, but, by itself, does not supply federal subject-matter jurisdiction over controversy involving other defendants.

*In Re Haug* is similar to the case *sub judice* in that both cases involve an alleged common law tort committed by a non-party to the bankruptcy.

Other courts have held that bankruptcy courts do not have authority to adjudicate state claims where the debtor is not a party to the proceeding and they are not a part of an ongoing bankruptcy case, as is the circumstances of this action. *In Re Warren,* 24 B.R. 846, 7 C.B.C.2d 842 (Bkrtcy.W.D.Ky. 1982). *See In Re Curtina International,* 15 B.R. 993, 5 C.B.C.2d 1474 (Bkrtcy.S.D.N.Y. 1981). However, it has also been held that

if an action against a non-debtor will affect the debtor's schedules of assets or liabilities filed in bankruptcy court, the action involving the non-debtor is "related to" the bankruptcy case and bankruptcy court has original jurisdiction over the action involving the non-debtor. *In Re Wesco Products Co.,* 19 B.R. 908 (Bkrtcy.N.D.Ill.1982).

In *Wesco,* Ramirez, a defendant in a circuit court action, was the corporate secretary of Wesco, a large corporation which had over six million dollars of liabilities and over four million dollars of assets at the time it filed its petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978. Milacron, a creditor of Wesco, filed a proof of claim in bankruptcy court. Milacron's claim arose when it received four checks from Wesco in the month preceding the filing of Wesco's bankruptcy petition which were dishonored because Wesco had insufficient funds in its checking account. Ramirez, Wesco's secretary, signed the checks that were sent to Milacron and subsequently dishonored by Wesco's bank. Milacron filed a motion to remand its claim back to the Circuit Court of Cook County. The check was written by an authorized officer of Wesco on a Wesco account. Therefore, the court held that Wesco's schedule of assets and liabilities could be affected. Thus, the action was "related to" the bankruptcy case and the bankruptcy court refused to remand. *Id.* at 909.

In *In Re Brothers Coal Company, Inc.,* 6 B.R. 567 (Bkrtcy.W.D.Va.,1980), the court held that the enforceability of a creditor's claim against the guarantor of a Chapter 11 debtor was related to the rights the debtor had under a loan agreement and was clearly within the jurisdiction of the bankruptcy court.

In the case of *In Re Brentano's, Inc.,* 27 B.R. 90 (Bkrtcy.D.N.Y.1983) in which the guarantor of a debtor-lessee sought to enjoin state court proceedings by the lessor against the guarantor, the bankruptcy court held that the case was within the jurisdiction of the bankruptcy court as a related case. The court, in granting the jurisdiction, stated:

The California state court action is clearly related to the Brentano's reorganization case before this Court and falls within this Court's jurisdictional grant. Underlying the entire matter is Brentano's lease (which Brentano's has rejected). If Pine Realty (Lessor) prevails against MacMillan (Guarantor), MacMillan (Guarantor) can recover from Brentano's (Debtor) under its indemnification agreement. The disposition of this claim and other similar claims involving Brentano's (Debtor's) leases, MacMillan guaranties, and the Brentano's-MacMillan indemnification agreement will ultimately determine the fate of this reorganization effort. This Court has jurisdiction over the Pine Realty (Lessor) action against MacMillan (Guarantor) which is based on the . . . guaranty agreement.

*Id.* at 92.

*In Re Otero Mills, Inc.,* 25 B.R. 1018 (D.C. D.N.Mex.1982) involved a suit in the district court to enjoin the bank from proceeding on a judgment against the president of the bankrupt corporation. The president was not in bankruptcy. The court held:

The suit brought by the Bank against Dugan is related to the title 11 proceeding in that Dugan is the president and a shareholder of the bankrupt corporation, and in that the debtor asserted that its reorganization plan would require contribution of assets by Dugan to the debtor.

The cases in which a matter involving a non-party to the bankruptcy action were found to be "related to" the bankruptcy action are distinguishable from the instant case. The defendants in this case have no binding legal commitment such as a guaranty, which would make them responsible for the debtor's debts. The defendants were in an attorney-client relationship, not an agency relationship with the debtor. Even if the defendants are considered to be agents of the debtor, it has been held that if tortious conduct is committed by an agent, he is responsible for it as an independent party, not as the agent of the principal. *Wood v. Standard Prods. Co.,* 456 F.Supp. 1098 (E.D.Va.1978). The defendants argue

that if they are found liable for their conduct, they will attempt to hold the debtors liable. The court finds that this potential liability of the debtors is too tenuous to bring this cause in to the bankruptcy action as being "related to" the bankruptcy action.

Accordingly, for the reasons stated herein, the court does not have jurisdiction over this action under 28 U.S.C. §§ 1471 and 1478. However, rather than remand this action back to the Circuit Court of Buchanan County at this time, the court will sever this libel action from the bankruptcy actions and transfer the libel action to this court's civil docket on the issue of whether this court has jurisdiction based upon diversity of citizenship.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.